29 F.3d 633
 148 L.R.R.M. (BNA) 2128
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
NORTHLAND HUB, INC., Respondent.
 No. 92-70180.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 13, 1993.
Decided July 15, 1994.
 
 Before: BROWNING, NORRIS, and O'SCANNLAIN, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 The National Labor Relations Board (the "Board") applies for enforcement of its August 27, 1991 order directing Northland Hub, Inc. ("Northland"), for the period from February 1, 1988 to at least October 1988, to recognize the Teamsters as the collective bargaining representative of certain dry goods employees who transferred to Northland's Cushman facility and to stop discriminating against certain former employees because of their membership in the Teamsters union. The Board also ordered Northland to pay "make whole" damages to employees who would have received higher benefits had their Teamsters contract been honored and to employees who suffered losses because of discrimination. Northland challenges nearly all of the relief that the Board ordered.
 
 
 3
 * Northland contends that its collective bargaining agreement with the Teamsters did not survive the February 1, 1988 relocation of its dry goods operations from Aurora to Cushman because the employees in that operation were accreted into the Cushman bargaining unit. The Board ruled that no accretion occurred until at least after October 1988.
 
 
 4
 The time for assessing whether an accretion has occurred is the time that a union demands recognition of the employees to be accreted. Gould, Inc., 263 N.L.R.B. 442, 446 (1982); GHR Energy Corp., 294 N.L.R.B. 1011, 1016 (1989); The Brooklyn Hospital Center, 309 N.L.R.B. 1163, 1182 (1992). Both the Teamsters union and the United Food and Commercial Workers ("UFCW") union sought recognition as the representative of the dry goods employees as of February 1, 1988.
 
 
 5
 Northland argues that the Board erred in not concluding that an accretion occurred as of February 1. It asserts that the Board's decision is inconsistent with its earlier decision in Boston Gas Co., 235 N.L.R.B. 1354 (1978). In Boston Gas, a company transferred customer inquiry employees, who handled calls from customers regarding their bills, from one of its facilities to a second facility. Employees at this second facility performed the related function of handling customer service requests over the telephone. The company consolidated the two groups of employees to integrate its customer inquiry and customer request operations so that a customer could resolve all of his or her customer service concerns in a single telephone call. The two groups of employees were cross-trained, and some employees assumed dual responsibilities of customer inquiry and customer request. Also, the employees shared common facilities, such as a lunch room and restrooms, and shared "common lines of supervision." The Board, though not concluding that the employees had not changed functions to the extent that a "new operation" was created, determined that an accretion had occurred. Id. at 1355.
 
 
 6
 Northland's consolidation resembles that in Boston Gas in some respects: all employees at Cushman shared a lunch room and restrooms, performed similar work, and, to a limited extent, shared some supervisors. However, Northland's consolidation, as of February 1, is different in several key particulars. First, unlike the "one call" integration of the telephone customer service operations in Boston Gas, there was no initial integration of the dry goods, bakery and dairy operations at Cushman: customer orders continued to be taken and delivered separately and according to different procedures. Second, unlike the cross-trained and dual-functioning employees in Boston Gas, employees at Cushman did not assist or become trained in work outside of their particular product operations. There thus was little interchange of employees. Third, although there was some common management at Cushman, the wholesale operations functioned with largely the same, separate day-to-day supervisors that they had used prior to the relocation.
 
 
 7
 In another case similar to Cushman's relocation, the Board relied upon these characteristics to conclude that no accretion had occurred. In Gould, Inc., 263 N.L.R.B. 442, a company transferred one of its electrical fittings and connectors operations ("CFC") to a facility containing a similar operation ("Die Cast"). Although the two operations initially shared employees, supervision and other items, they quickly diverged. By the time that the union demanded recognition of the employees of the new CHC operation, the two operations had a distinct support service, separate "firstline" supervision, and little employee interchange. Based upon these facts, the Board concluded that the employees of the new operation were not accreted to the bargaining unit of the old operation.
 
 
 8
 The dry goods operation at Cushman resembled this situation on February 1. Further, unlike the unrepresented employees in Gould, the dry goods employees had a history of Teamster representation and wanted this representation to continue. We thus conclude that the Board's decision in the instant case is consistent with its past precedent and is not arbitrary or capricious. See International Ass'n of Machinists & Aerospace Workers v. NLRB, 759 F.2d 1477, 1480 (9th Cir.1985).
 
 
 9
 Northland points out that the Board has determined that an accretion eventually occurred at Cushman. It infers from this fact that the Board, to reach its decision, must have relied upon a new "delayed accretion" theory and complains that this "new" theory should not be applied retroactively to Northland's reorganization of its wholesale operations.
 
 
 10
 Northland's argument is unpersuasive. First, both the UFCW and the Teamsters continued to compete for recognition as the appropriate representative of the dry goods employees throughout 1988. Consequently, when Northland fully reorganized its operations later that year, the conditions again were ripe at that time for the Board to examine whether an accretion was proper: (1) the reorganization had eliminated the dry goods operation's separate group identity and had enhanced its community of interest with Cushman's UFCW employees, and (2) union demands were present at that time.
 
 
 11
 Second, even if the Board erred in finding that an accretion occurred at a later date, this fact does not benefit Northland. Had the Board concluded that the dry goods employees never accreted, the Teamsters would have continued to have been their appropriate representative. By finding that an accretion occurred at a later time, then, the Board limited the Teamsters' representative status and, therefore, limited Northland's backpay liability.
 
 
 12
 Given the adequacy of the Board's conclusion that no accretion occurred as of February 1, 1988, Northland's remaining contentions necessarily fail. Northland argues that the Board's departure from precedent and new "delayed accretion" rule creates workplace instability and impedes industrial peace. As discussed above, however, the Board's decision is consistent with precedent and does not create a new rule. Northland's related argument, that the Board's rule change should not be applied retroactively, fails for the same reason. Further, backpay is not punitive because Northland repudiated a collective bargaining agreement that remained in effect.
 
 
 13
 Finally, Northland is not entitled to a reopened evidentiary hearing. As both parties acknowledged during oral argument, the General Counsel argued at the evidentiary hearing that this case invovled only a relocation of operations. It was Northland that asserted accretion as a defense to the General Counsel's position. Having introduced this defense, Northland cannot now complain that the hearing should be reopened because it was unsuccessful at demonstrating that an accretion occurred as early as February 1, 1988.
 
 II
 
 14
 The Board concluded that Northland had refused to transfer former Aurora employees to Cushman because of an animus toward the Teamsters union. Northland asserts that, to the extent that it did not hire some former Aurora employees at Cushman, it failed to hire them because there was no work available. Given this, Northland concludes that the Board's remedy, which orders reinstatement of some employees, preferential hiring of others, and backpay, is punitive.
 
 
 15
 Substantial evidence supports the Board's finding of discrimination. A company's refusal to employ individuals because of their union status or activities is unlawful. See Marko Contractors, Inc., 275 N.L.R.B. 425, 427 (1985). The ALJ found that Dan Gavora had instructed Mongold not to hire "too many Teamsters" because he wanted to keep their numbers low and had expressed dislike for the Teamsters on other occasions. Gavora also had ordered Mongold to subcontract trucking work to outside drivers so that he could avoid hiring Teamsters. Further, Klu had looked for "people off the street" to hire instead of selecting former employees seeking work at Cushman. Finally, several former Aurora employees were immediately available for work.
 
 
 16
 Although Northland argues that other facts indicate that Northland did not discriminate against the former Aurora employees, substantial evidence demonstrates an anti-Teamster animus that appears to have caused Northland to avoid employing former Aurora employees. Requiring Northland to hire these employees alleviates this discrimination and thus, appears to be within the Board's "broad discretion" to fashion remedies for unfair labor practices. See Sure-Tan, Inc. v. NLRB, 467 U.S. 883, 898 (1984).
 
 
 17
 The Board's backpay remedy also appears proper. The Board's order requires backpay to employees "only for any loss of earnings they may have suffered" from a discriminatory failure to rehire them at Cushman. To the extent that Northland can show at a later compliance hearing that it did not have work available for former Aurora employees, these employees will not be entitled to backpay.
 
 
 18
 The Board's order is ENFORCED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3